**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

**TONY L. HOBBS,**

      **Petitioner,**

**vs.**                                        **Case No. 4:11cv223-MP/CAS**

**KENNETH S. TUCKER,**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On May 17, 2011, Petitioner Tony L. Hobbs, proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Doc. 1. After direction by this Court, Petitioner filed an amended § 2254 petition on September 28, 2011. Doc. 11. Petitioner challenges the conviction and sentence imposed by the Second Judicial Circuit, Gadsden County, on May 10, 2000, following a jury trial. *Id.*

Respondent filed a motion to dismiss the habeas petition as untimely. Doc. 15. This Court denied that motion. *See* Docs. 18 (Report and Recommendation), 21 (Order). Respondent filed an answer to the habeas petition on October 17, 2012. Doc. 22. Respondent also filed a notice of supplemental authority on October 24, 2012. Doc. 23. Petitioner has filed replies to the answer and the notice. Docs. 24 and 25.

The matter was referred to the undersigned United States Magistrate Judge for issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters, pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration, the undersigned has determined no evidentiary hearing is required for the disposition of this matter. *See* Rule 8(a), R. Gov. § 2254 Cases. The pleadings and attachments before the Court show that the petition is timely and should be denied.

## Background and Procedural History

By amended information filed June 18, 1999, in the Second Judicial Circuit, Gadsden County, the State of Florida charged Petitioner with one count of sexual battery on a person under the age of 12, in violation of section 794.011(2), Florida Statutes, in connection with events that took place between June 22, 1986, and June 22, 1988. Doc. 15 Ex. A at 3. Petitioner proceeded to a jury trial on April 20, 2000. *See id.* Ex. B (trial transcript).

The issue at trial involved whether the alleged sexual battery took place when the victim was under 12 years of age. At the time of the trial, the victim was 23 years old. Doc. 15 Ex. B at 36. At trial, the victim testified that, starting when she was 11 years old, Petitioner, her step-father, would come into her room at nighttime, about "once every two weeks or once a month," put his hands under her bedcovers, and touch her "[i]n my vagina." *Id.* at 37, 40-42, 47. She testified that he penetrated her vagina with his fingers. *Id.* at 42. She also testified that, after she turned 12, Petitioner "started out with oral sex . . . [m]ostly him on me . . . [t]hen it escalated into me performing oral sex

on him." *Id.* at 46-47. Eventually, "he would have sex with me, intercourse" once a week "at first and then it was almost every other day." *Id.* at 47. She testified these acts stopped when she was 16 because she "had a boyfriend and he started spending the night." *Id.* at 47-48.

Petitioner testified at his trial. Doc. 15 Ex. B at 129-44. He testified that he had sex with the victim when "[s]he was approximately 14 or 15 years old." *Id.* at 131. He testified, "She seduced me over a period of time and I finally got weak and give in." *Id.* He testified he did not ever have "any sort of relationship with her" where he fondled her before she was 12 years old. *Id.* He testified he never went into her room at night before she was 12 years old. *Id.* On cross-examination, Petitioner testified that, after the victim turned 12, he started performing oral sex on her and, over a period of time, this led to full sexual intercourse. *Id.* at 135. He testified he did not remember when the first "sexual touching or act" he performed on the victim occurred. *Id.* at 136.

The jury found Petitioner guilty as charged. *Id.* at 212-13; Doc. 15 Ex. A at 24. The state trial court adjudicated him guilty and, on May 10, 2000, sentenced him to life in prison with a 25-year minimum mandatory term. Doc. 15 Ex. A at 28-32.

Petitioner timely appealed his judgment and sentence to the First District Court of Appeal (DCA), and that court affirmed the case in an opinion dated March 28, 2002. *Id.* Ex. F; *see* Hobbs v. State, 820 So. 2d 347 (Fla. 1st DCA 2002). Petitioner moved for rehearing, which the First DCA denied on July 9, 2002. Doc. 15 Ex. G. The First DCA did certify conflict with a Second DCA decision, however, and Petitioner then sought review in the Florida Supreme Court. *See id.* Ex. H. On September 18, 2003, the

Florida Supreme Court dismissed the case indicating review was improvidently granted. *See* <u>Hobbs v. State</u>, 863 So. 2d 167 (Fla. 2003).

On December 26, 2003, Petitioner filed a habeas petition in the First DCA, alleging ineffective appellate counsel. Doc. 15 Exs. O and P. The First DCA denied the petition on the merits. *Id.* Ex. Q. Petitioner sought rehearing, which the court denied on April 27, 2004. *Id.* Exs. R and S; *see* <u>Hobbs v. State</u>, 871 So. 2d 879 (Fla. 1st DCA 2004).

On September 16, 2004, Petitioner filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Doc. 15 Ex. T at 1-47. Petitioner amended that motion. *Id.* at 89-125. The trial court dismissed the motion. *Id.* Ex. U at 205. On appeal, the First DCA explained the motion was timely filed and, accordingly, reversed and remanded the cause for further proceedings. *Id.* Ex. W; <u>Hobbs v. State</u>, 931 So. 2d 212 (Fla. 1st DCA 2006).

On remand, the post-conviction trial court considered the amended motion and, in October 2008, held an evidentiary hearing on one of the three claims. Doc. 15 Exs. X, Y, and Z. Another hearing took place in June 2009. *Id.* Ex. DD and EE. The court denied postconviction relief. *Id.* Ex. AA at 208-13. On appeal, Petitioner filed an initial brief but the State did not file an answer brief. *Id.* Exs. FF and GG. The First DCA affirmed without a written opinion, and the mandate issued September 21, 2010. *Id.* Ex. II; <u>Hobbs v. State</u>, 43 So. 2d 695 (Fla. 1st DCA 2010) (table).

On February 1, 2011, Petitioner filed a habeas petition in the First DCA. Doc. 15 Ex. JJ (Petition for Writ of Habeas Corpus on Structural Error and Manifest Injustice

Grounds, alleging trial court did not follow requirements for closing courtroom and requesting First DCA reconsider its prior opinion in this case to correct manifest injustice).  That court denied the petition on March 2, 2011, with a citation to Baker v. State, 878 So. 2d 1236 (Fla. 2004).  Hobbs v. State, 60 So. 3d 422 (Fla. 1st DCA 2011). Petitioner sought rehearing, which the court denied on April 25, 2011.  *Id.*; Doc. 15 Ex. MM.

Meanwhile, on June 5, 2007, Petitioner had filed a habeas petition in Martin County, which was transferred to Gadsden County.  Doc. 15 Ex. NN.  That petition was not ruled on until July 26, 2011, when the court considered it as a Rule 3.850 motion, found it untimely, and denied it.  *Id.*

As indicated above, Petitioner Hobbs filed his pro se § 2254 petition in this Court on May 17, 2011.  Doc. 1.  In his petition, as amended, Hobbs raises one ground and asserts his right to a public trial under the Sixth Amendment to the U.S. Constitution was violated when the state trial court cleared the courtroom and did not follow the requirements of Waller v. Georgia, 467 U.S. 39 (1984).  Doc. 11 at 4.

Respondent answers that the state courts did not unreasonably determine the facts and did not misapply clearly established law, which, at the time did not apply Waller to partial courtroom closures as occurred in this case.  Doc. 22.  Respondent submits the case of Evans v. Secretary, Florida Department of Corrections, 699 F.3d 1249 (11th Cir. 2012), as supplemental authority.  Doc. 23.

Hobbs replies that, among other things, absent evidence in the record as to whether the closure was partial or total, it is not possible for a reviewing court to

properly evaluate whether the closure violated his Sixth Amendment right to a public trial.  Doc. 24 at 12.  Hobbs further asserts that a fair reading of the record reflects that "it is not at all deficient as to the scope of the closure" and the only conclusion that can be fairly drawn is that the courtroom was completely cleared of spectators prior to the victim's testimony  *Id*.  Hobbs acknowledges that nothing in the record indicates the duration of the closure and asserts that even if spectators were permitted to return immediately after the victim's testimony, a total closure of the courtroom nevertheless occurred during the victim's testimony necessitating application of <u>Waller</u>.  *Id*. at 12-13.

## **Analysis**

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody.  Section 2254(d) provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See* <u>Williams v. Taylor</u>, 529 U.S. 362 (2000); <u>Gill v. Mecusker</u>, 633 F.3d 1272 (11th Cir. 2011).

If a state prisoner's habeas petition "includes a claim that has been 'adjudicated on the merits in State court proceedings,' § 2254(d), an additional restriction applies." Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011). The federal court may not grant relief unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" Cullen, 131 S.Ct. at 1398 (quoting Harrington v. Richter, 131 S.Ct. 770, 786 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)). This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 131 S.Ct. at 1388.

Petitioner Hobbs argues that the state trial court violated his constitutional right to a public trial by clearing the courtroom for the victim's testimony without following the requirements of Waller v. Georgia. Doc. 11 at 4. The Sixth Amendment to the U.S. Constitution affords an accused the right to a public trial. Waller, 467 U.S. at 46. Before the court closes the trial courtroom to the public,

> the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

*Id.* at 48.

In this case, the trial judge directed the clearing of the courtroom, evidently

pursuant to section 918.16, Florida Statutes (1999), for the victim's testimony.  That

statute provides:

> (1) Except as provided in subsection (2), in the trial of any case, civil or criminal, when any person under the age of 16 or any person with mental retardation as defined in s. 393.063(44) is testifying concerning any sex offense, the court shall clear the courtroom of all persons except parties to the cause and their immediate families or guardians, attorneys and their secretaries, officers of the court, jurors, newspaper reporters or broadcasters, court reporters, and, at the request of the victim, victim or witness advocates designated by the state attorney's office.

> (2) <u>When the victim of a sex offense is testifying concerning that offense in any civil or criminal trial, the court shall clear the courtroom of all persons upon the request of the victim, regardless of the victim's age or mental capacity, except that parties to the cause and their immediate families or guardians, attorneys and their secretaries, officers of the court, jurors, newspaper reporters or broadcasters, court reporters, and, at the request of the victim, victim or witness advocates designated by the state attorney may remain in the courtroom.</u>

(emphasis added).  In particular, a review of the record in this case reflects that, after

the State's opening statement, defense counsel reserved opening until the beginning of

the defense.  Doc. 15 Ex. B at 34.  The following then transpired:

> MR. COMBS [prosecutor]: Judge, can we approach the bench for a minute?

> THE COURT: Sure.

> (Whereupon, a bench conference was had as follows:

> MR. COMBS: My first witness will be Tracy who is the victim, and <u>pursuant to statute I ask that the courtroom be cleared of all spectator personnel</u>.

THE COURT: What about the victim advocate?

MR. COMBS: She's actually – Marlene will be here with the victim.  She's not here with the victim.

(Whereupon, the bench conference was concluded.)

THE COURT: Okay.  <u>For the purpose of the next witness, I'm going to ask that all of you out in the gallery retire from the courtroom.  You're welcome to come back after that witness has testified, but not during this one</u>.

MR. COMBS: Your Honor, the State would call Tracey Andrews.

(PAUSE)

*Id.* at 34-35 (emphasis added).  Ms. Andrews was then sworn and she testified as to the events giving rise to the charges against Petitioner.  *Id.* at 34-79.  After her testimony, the State called the next witness, a police officer.  *Id.* at 79.  Nothing in the transcript specifically indicates when any spectators returned to the galley.  *See id.* at 211.

Hobbs raised an issue in his direct appeal regarding this closure of the trial courtroom.  Doc. 15 Ex. D.  In particular, in the second point on appeal in the Amended Initial Brief, he argued: "Whether the trial court violated Appellant's right to a public trial by closing the courtroom for the testimony of a 20-year-old victim."  *Id.* at i.  Petitioner's entire argument on this point provided:

> The victim, Ms. Andrews, was 20-years-old at the time of trial (T 35).  Nonetheless, the court cleared the courtroom for her testimony and without making the necessary findings pursuant to section 918.16, Fla. Stat., in violation of Appellant's right to a public trial (T 34, 35).  See, **Thornton v. State**, 585 So. 2d 1189, 1190 (Fla. 2nd DCA 1991).  The issue constitutes fundamental error which may be raised for the first time on appeal.  See, **Williams v. State**, 736 So. 2d 699 (Fla. 4th DCA 1999).  The remedy is a new trial.

*Id.* at 10.

In the Answer Brief, the State of Florida argued that Hobbs had not preserved this point for appellate review by raising an objection to the removal of persons from the courtroom gallery. Doc. 15 Ex. E at 16. The State distinguished the Williams case cited in the Amended Initial Brief by explaining that case involved a total closure of the courtroom, whereas in this case "the courtroom was only closed partially to spectators for a brief time and nothing within the record indicates that there was a total closure of the courtroom from the press or Appellant's family members." *Id.* at 16-17. The State explained that such partial closures "are held to a lower standard than where there is total closure of the courtroom" and cited, as a comparison, Judd v. Haley, 250 F.3d 1308 (11 Cir. 2001). Doc. 15 Ex. E at 17. The State argued that, because of this distinction, the argument on appeal did not raise fundamental error. *Id.* On the merits, the State argued the statute authorized partial closure of the courtroom for adult victims and child victims under the age of sixteen. *Id.* at 17, 20. The State argued the judge only partially closed the courtroom and thus a Waller inquiry was not required. *Id.* at 17, 22.

In its opinion affirming Hobbs' conviction and sentence, the First DCA held that Hobbs' argument regarding improper closure of the courtroom was not preserved for review. Hobbs, 820 So. 2d at 348, 350. The court quoted from the trial transcript, as above, and explained that "[d]efendants in criminal prosecutions are entitled to a public trial," citing the Sixth Amendment to the U.S. Constitution, Article 1, Section 16(a), of the Florida Constitution, and Waller v. Georgia. Hobbs, 820 So. 2d at 348-49. The court further explained that "[t]he Florida Legislature balanced the various interests applicable

in this case as provided in section 918.16[(2)], Florida Statutes (2000)," and

"[c]ompliance with this statute results in a partial closing of the courtroom." *Id.* at 349.

The court explained that Hobbs argued on appeal that the trial court cleared the

courtroom without making the necessary findings pursuant to the statute and, although

the court addressed the substance of the issue, the court ultimately concluded the

argument was not preserved for appellate review. *Id.* at 349-50. The opinion provides:

> We agree with the Fifth District Court of Appeal in Clements v. State, 742 So. 2d 338, 341 (Fla. 5th DCA 1999), that a separate Waller inquiry is not required when the trial court follows section 918.16 to achieve a partial closing, citing Douglas v. Wainwright, 739 F.2d 531 (11th Cir.1984). In Douglas, the court distinguished Waller on the basis that it involved a total closing whereas in Douglas there was a partial closing (the press and family members were allowed to remain). 739 F.2d at 532. In a partial closing, only a "substantial" rather than "compelling" reason for the closure is necessary. 739 F.2d at 533. *See also* Judd v. Haley, 250 F.3d 1308, 1315 (11th Cir.2001) ("[I]n the event of a partial closure, a court need merely find a "substantial" reason for the partial closure, and need not satisfy the elements of the more rigorous Waller test.").
>
> The Legislature, by enacting section 918.16, recognizes that there is a substantial, if not compelling, state interest in protecting victims while testifying concerning a sexual offense, and has narrowly drawn it to ensure that a defendant's right to an open trial is protected. *See* Clements, 742 So. 2d at 341-42. Accordingly, the requisite findings for a constitutional partial closing during the testimony of a sex crime victim are fulfilled by compliance with section 918.16. *Contra* Whitson v. State, 791 So.2d 544, 547-48 (Fla. 2d DCA 2001)(stating that the Waller analysis for a partial closing cannot be performed by reliance on section 918.16).
>
> The State requested closure "pursuant to statute." Although not specifically referenced by the State, the reference to the statute in context of the type of trial being conducted and the upcoming victim's testimony, along with the trial court's responsive question regarding whether the victim advocate would remain, indicate the parties knew that the State was attempting to comply with section 918.16.

In <u>Arizona v. Fulminante</u>, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), the Court described the deprivation of the right to a public trial as a "structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." However, in this case, the State was seeking to close the trial in a constitutionally valid manner pursuant to the statute. To the extent there was any error during the State's attempt to comply with the statute,[2] it was an error in the trial process itself rather than a structural defect. Accordingly, any error was not preserved for review because Appellant did not object.[3]

*Id.* In footnote 2, the court explained:

For example, the trial court may have excluded some observers who should have been permitted to remain according to the statute. However, Appellant did not object and identify any such persons at trial so any error could be remedied. *See* <u>Hanks v. State</u>, 786 So. 2d 634, 636 (Fla. 1st DCA 2001) ("Counsel must give the trial court an opportunity to correct any error before bringing it to the appellate court.").

In footnote 3, the court explained that the alleged constitutional error was not fundamental:

The Florida Supreme Court in <u>Evans v. State</u>, 26 Fla. L. Weekly S823, S827 (Fla. Dec. 13, 2001), addressed an alleged constitutional violation arising from a partial closing during voir dire, and concluded that there was no reversible error. The Court relied in part on the defendant's failure to object, so it implicitly held that an alleged constitutional error for a partial closing is not fundamental.

*Id.* at 350 n.3. As indicated above, although the Florida Supreme Court initially granted review, it subsequently dismissed the case indicating review was improvidently granted. *See* <u>Hobbs</u>, 863 So. 2d at 167. *See also* <u>Kovaleski v. State</u>, 103 So. 2d 859 (Fla. 2012) (holding that "section 918.16(2) acceptably embraces the requirements set forth in <u>Waller</u>" because "[p]ursuant to the statute, the courtroom is partially closed not automatically but only upon the request of the victim," and "protecting the victim upon

his or her request is a compelling interest of the State, thus satisfying the first prong of

Waller," and "the partial closure is narrowly tailored to the interest of protecting the

victim" thereby satisfying the second prong "because of the number of people including

members of the press who are explicitly allowed to remain in the courtroom," and

allowing the parties in the statute to remain "provides for the most reasonable

alternative to closing the courtroom during a trial" thereby satisfying the third prong, and

for the fourth prong, the court "caution[ed] trial courts to ensure that the statute is in fact

applicable to the case before them and is properly applied" as "[r]eflecting such

determinations in the record will allow for proper appellate review").

     Florida appellate courts do not consider the merits of a Sixth Amendment public

trial claim if no objection is made at the trial level, as reflected in the First DCA's opinion

in Hobbs' direct appeal. Hobbs, 820 So. 2d at 350; see Alvarez v. State, 827 So. 2d

269, 275-76 (Fla. 4th DCA 2002) (holding that failure to object to closure of trial

constitutes waiver of right to public trial and does not preserve issue for appellate

review); Jones v. State, 883 So. 2d 369, 370 (Fla. 3d DCA 2004). See also Sharpe v.

McDonough, No. 4:05cv164-RH/WCS, 2006 WL 2038562, at *3 (N.D. Fla. July 19,

2006) (Order denying § 2254 petition and adopting Report and Recommendation which

explained, among other things, Florida courts do not consider merits of Sixth

Amendment public trial claim if no objection made at trial and, therefore, under Florida

law, petitioner procedurally defaulted such claim by failing to raise objection to clearing

of courtroom). Therefore, Petitioner procedurally defaulted his Sixth Amendment public

trial claim by failing to raise an objection when the trial court cleared the courtroom pursuant to the state statute.

If a defaulted federal claim was presented to the state court and the state court's decision rests on an independent and adequate state ground of procedural default, then a federal court will not address the merits of the federal claim absent a showing of cause and prejudice for the default. Coleman v. Thompson, 501 U.S. 722, 730-32 (1991). Here, as reflected in the First DCA's opinion, although the federal claim was discussed, that court specifically relied on the state appellate procedural bar by stating "any error was not preserved for review because Appellant did not object" and noting the alleged constitutional error was not fundamental. Hobbs, 820 So. 2d at 350. Accordingly, the state court denied Hobbs' claim based on an independent and adequate state ground.

For this Court to reach the merits of Hobbs' claim then, Hobbs must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that the failure to consider the claims will result in the fundamental miscarriage of justice." Coleman, 501 U.S. at 750; see Purvis v. Crosby, 451 F.3d 734, 738-742 (11th Cir. 2006); Espada v. Sec'y, DOC, No. 2:08cv504-FtM-36DNF, 2011 WL 4459169, at *14 (M.D. Fla. Sept. 26, 2011) (opinion and order denying § 2254 petition, and explaining: "The prejudice analysis for overcoming the procedural default is similar to the prejudice analysis required in analyzing an ineffective assistance of counsel claim under Strickland v. Washington, 466 U.S. 668, 694-95 (1984)). Hobbs has not made this showing. Specifically, Hobbs has not shown that if

the state trial court had not cleared the courtroom as it did, the victim/witness's

testimony would have changed in a way to create a reasonable doubt for the jury. *See,*

*e.g.*, Griffith v. Tucker, No. 3:11cv288-MCR/EMT, 2012 WL 3230413, at *10 (N.D. Fla.

July 5, 2012) (report and recommendation to deny § 2254 petition alleging, in pertinent

part, ineffective assistance of counsel for failure to object to partial closure of courtroom

during victim's testimony: "Petitioner has alleged nothing to show that the presence of

public observers would have changed the child victim's testimony in a way which would

have created a reasonable doubt about Petitioner's guilt in the jury's mind.  The victim

could just as well have been a more sympathetic or credible witness if forced to testify

publicly."); Espada, 2011 WL 4459169 at *15 (denying § 2254 habeas relief on grounds

asserting trial court error and ineffective assistance of counsel concerning closure of

courtroom during victim's testimony and explaining "because Petitioner did not preserve

his trial court error claim, he must demonstrate 'actual prejudice' in order to overcome

the procedural default" and he had not done so because "[i]f counsel had objected and

had persuaded the trial judge not to close the courtroom, there is no reason to believe

that the victim's testimony would have changed in a way to create a reasonable doubt in

the jury's mind").

As set forth above, the issue in the trial involved whether the sexual battery

occurred before the victim reached 12 years of age; the victim testified that it did and

Petitioner testified that it did not. *Compare* Doc. 15 Ex. B at 37-47 (victim's testimony)

*with id.* at 131-36 (Petitioner's testimony).  It is apparent, from the jury's verdict of guilty

as charged, that the jury gave the greater weight to the victim's testimony.  Accordingly,

Hobbs has not established "actual prejudice" to overcome the procedural default of his trial court error claim. *See* Espada, 2011 WL 4459169 at *15.

Even reaching the merits, Hobbs has not demonstrated entitlement to relief. asserts a dispute exists regarding whether the victim advocate was present after the trial court cleared the courtroom and quotes from the trial transcript. Doc. 11 at 4A-D. In his reply to Respondent's answer, Hobbs again quotes the trial transcript and "urges [complete] closure is structural error." Doc. 24 at 2; *see id.* at 12-13. Hobbs argues a fair reading of the record reflects "a total closure of the courtroom during the testimony" of the victim/witness. *Id.* at 12.

As discussed above, however, because no objection was raised in the trial court, necessitating the trial court clarify the ruling, the record does not reflect exactly which persons remained in the courtroom. From the relevant portion of the transcript, quoted above, it appears at least one person remained in the courtroom during the victim/witness's testimony as, in response to a question from the judge, the prosecutor indicated "Marlene will be here with the victim" and then, evidently referring to another person, stated, "She's not here with the victim." Doc. 15 Ex. B at 34-35.

Further, in Hobbs' direct appeal, the state appellate court indicated that compliance with the statute, section 918.16(2), Florida Statutes, "results in a partial closing of the courtroom." Hobbs, 820 So. 2d at 349. As that court observed, "the trial court may have excluded some observers who should have been permitted to remain according to the statute," but Hobbs "did not object and identify any such persons at trial so any error could be remedied." *Id.* at 350 n.2; *see* Purvis, 451 F.3d at 739 ("Purvis

argues that an objection by his trial counsel would have preserved the issue for appeal and led to a reversal of his conviction, which would have been a different result from the affirmance that occurred. There are two flaws with this argument. One is its assumption that the trial judge would have overruled an objection if one had been made. There is as much reason to believe that pointing out the error of his ways to the trial judge would have caused him to mend those ways, thereby depriving Purvis of the issue on appeal. The second and more fundamental flaw in this argument is that it focuses on the outcome of the appeal, not of the trial[, and the trial outcome is the proper focus for evaluating prejudice under <u>Strickland v. Washington]</u>."). Similarly, in this Court, Hobbs does not identify any observers who should have been permitted to remain in the courtroom pursuant to the statute.

From the record, it does appear, in fact, that the closure was only partial and temporary. The trial judge asked about the victim advocate and the prosecutor indicated, "Marlene will be here with the victim." Doc. 15 Ex. B at 34-35. Hobbs concedes in his reply that "[t]he prosecutor named someone that would remain in the courtroom with the victim, although it is unclear from the record what her relationship with the victim was." Doc. 24 at 5. In addition, from the judge's ruling, the partial closure was for only the victim's testimony. *See, e.g.*, <u>Purvis</u>, 451 F.3d at 740 ("Here the closure was not complete. It was during the testimony of only a single witness, albeit the most important witness against the defendant, and at least two members of the public were allowed to remain in the courtroom."); <u>Judd v. Haley</u>, 250 F.3d 1308, 1315 (11th Cir. 2001) ("[T]he precedent that we do have defines 'partial closures' as

situations in which the public retains some (though not complete) access to a particular proceeding.").

A full closure requires a <u>Waller</u> inquiry and, if a defendant preserves the issue at trial and presents it on appeal, that defendant does not have to establish he was prejudiced by the closure. *See* <u>Purvis</u>, 451 F.3d at 740 ("At least when the closure is full, an error in removing the public from the courtroom during a trial is a 'structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.'" *See* <u>Arizona v. Fulminante</u>, 499 U.S. 279, 310 . . . (1991). For that reason, the Supreme Court has held that a defendant who properly preserves the issue at trial and presents it on direct appeal is not required to establish that he was specifically prejudiced by the closure. <u>Waller</u>, 467 U.S. at 49-50 & n.9."). *See also* <u>Judd</u>, 250 F.3d at 1315 ("[W]e have recognized a distinction between total closures of proceedings, as in <u>Waller</u>, and situations where the courtroom is only partially closed to spectators. . . . [I]n the event of a partial closure, a court need merely find a 'substantial' reason for the partial closure, and need not satisfy the elements of the more rigorous <u>Waller</u> test."); <u>Douglas v. Wainwright</u>, 739 F.2d 531, 532-33 (11th Cir. 1984) (holding that court need not satisfy <u>Waller</u> test in partial closure). In this case, however, as indicated above, Hobbs raised no objection in the trial court to the clearing of the courtroom in the way it did and, therefore, this case is distinguishable from <u>Waller</u>.

The trial court here partially cleared the courtroom during the victim's testimony as permitted by section 918.16(2), Florida Statutes (1999), with no objection. The First

District Court of Appeal affirmed Hobbs' conviction and indicated his point concerning

the courtroom closure was not preserved for appellate review.  Hobbs has not

established the state court's adjudication of his Sixth Amendment public trial claim was

contrary to, or involved an unreasonable application of, clearly established federal law

as it existed at the time of the state court's adjudication.  *See* 28 U.S.C. § 2254(d);

Guyton v. Butler, 490 F. App'x 331, 332 (11th Cir. 2012) (affirming denial of § 2254

petition where state court found petitioner, through counsel, consented to courtroom

closure and record did not contradict that finding, and explaining, "No clearly established

Supreme Court precedent holds that a defendant cannot waive the right to a public trial,

nor that the court must balance the interests of closure absent an objection.

Accordingly, it was not contrary to, or an unreasonable application of, clearly

established federal law for the state court to conclude that it had not violated Guyton's

Sixth Amendment rights.").

## Conclusion

For the reasons stated above, Hobbs has not shown entitlement to habeas

corpus relief.  Hobbs has not established actual prejudice to overcome the procedural

default of his alleged trial court error claim.  The amended § 2254 petition (Doc. 11)

should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the U.S. District Courts

provides that "[t]he district court must issue or deny a certificate of appealability when it

enters a final order adverse to the applicant," and if a certificate is issued "the court

must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner cannot make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the Court should deny a certificate of appealability in its final order. Leave to appeal in forma pauperis should also be denied, as an appeal would not be taken in good faith. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

The second sentence of Rule 11(a) provides that "[b]efore entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Petitioner shall make any argument as to whether a certificate should issue by filing objections to this report and recommendation.

### Recommendation

It is therefore respectfully **RECOMMENDED** that the amended § 2254 petition for writ of habeas corpus (Doc. 11) be **DENIED**, a certificate of appealability be **DENIED**, and leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on January 28, 2014.

**s/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy of this report and recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.